**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-2942

ALEXA COLLINS, GALLIENNE NABILA, JANET GUZMAN, STEPHANIE RAO, and KATARINA VAN DERHAM,

Plaintiffs,

v.

MECCA SPORTS BAR, LLC d/b/a MECCA SPORTS BAR f/k/a DUBAI,

Defendant.

---

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

---

Plaintiffs ALEXA COLLINS, GALLIENNE NABILA, JANET GUZMAN, STEPHANIE RAO, and KATARINA VAN DERHAM, (collectively, "Plaintiffs"), file this Complaint against MECCA SPORTS BAR, LLC, d/b/a MECCA SPORTS BAR f/k/a DUBAI ("Defendant") respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their bar, MECCA SPORTS BAR f/k/a DUBAI located at 2915 W Mississippi Ave, Denver, Colorado 80219 (hereinafter referred to as the "Bar" or "Mecca").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) State Common Law Misappropriation of Likenesses Violation of Right to Privacy; Right of Publicity; and d) Negligence and Respondeat Superior.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant MECCA SPORTS BAR, LLC, is a limited liability company formed under the laws of the state of Colorado, with its principal place of business located at 2915 W Mississippi Ave, Denver, Colorado, 80219. Upon information and belief, MECCA SPORTS BAR, LLC operates MECCA SPORTS BAR f/k/a DUBAI, which is located at 2915 W Mississippi Ave, Denver, Colorado 80219.

8. Venue is proper in the United States District Court for the District of Colorado because Defendant's principal place of business is located in Denver, Colorado, Denver County.

9. A significant portion of the alleged causes of action arose and accrued in Denver, Colorado, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominantly located in Denver, Colorado.

## PARTIES

***Plaintiffs***

10. Plaintiff ALEXA COLLINS ("COLLINS") is a well-known professional model and a resident of Miami-Dade County, Florida.

11. Plaintiff GALLIENNE NABILA ("NABILA") is a well-known professional model and a resident of Los Angeles County, California.

12. Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model and a resident of Los Angeles County, California.

13. Plaintiff STEPHANIE RAO ("RAO") is a well-known professional model and a resident of Los Angeles County, California.

14. Plaintiff KATARINA VAN DERHAM ("VAN DERHAM") is a well-known professional model and a resident of Los Angeles County, California.

***Defendant***

15. Defendant, MECCA SPORTS BAR, LLC d/b/a MECCA SPORTS BAR f/k/a DUBAI, is a limited liability company formed under the laws of the state of Colorado and registered to conduct business in Colorado. During times relevant to this action, MECCA SPORTS BAR, LLC operated MECCA SPORTS BAR f/k/a DUBAI.

16. Service of process may be perfected upon Defendant MECCA SPORTS BAR, LLC d/b/a MECCA SPORTS BAR f/k/a DUBAI by serving the registered agent for service of process, Manuel Mercado Ibarra, who can be located at 4850 S Ammons St, Unit 930, Littleton, CO 80123.

## FACTUAL ALLEGATIONS

17. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for advertising products and services.

18. Plaintiffs' careers in the modeling industry place a high degree of value on their goodwill and reputation, which is critical to maximize their earning potential, book modeling contracts, and establishing each of their individual brands. In furtherance of establishing and maintaining their brands, Plaintiffs are necessarily selective concerning the companies and brands for which they model.

19. Each of the Plaintiffs' Images was misappropriated and intentionally altered by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

20. In the case of each Plaintiff, this apparent claim was false.

21. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

22. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

23. Further, in certain cases, Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

24. COLLINS is an American swimsuit model who has worked for Baja Bae tanning lotion, LaBoom By Crystal tanning lotion, and TBS Swimwear. She is an ambassador for Fashion Nova. She was nominated for the Miss Jetset Magazine Cover Model Contest and took 29th place. She is also an actress, known for In Real Life (2021) and Luli Fama Take Over in the British Virgin Islands! (2019). She became popular on Instagram and has amassed over 2.5 million followers. Additionally, she has 1.2 million followers on TikTok and 439,000 followers on Facebook. [1]

25. That we know of, COLLINS is depicted in the photos in Exhibit "A" to promote Mecca on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Collins was either an employee working at Mecca, that she endorsed Mecca, or that she was otherwise associated or affiliated with Mecca.

26. COLLINS has never been employed at Defendant's establishment, has

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of the same.

27. NABILA is an actress and model residing in Los Angeles, California. From a young age, she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade, working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

28. That we know of, NABILA is depicted in the photos in Exhibit "B" to promote Mecca on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Nabila was either an employee working at Mecca, that she endorsed Mecca, or that she was otherwise associated or affiliated with Mecca.

29. NABILA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of the same.

30. GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on

YouTube.

31. That we know of, GUZMAN is depicted in the photos in Exhibit "C" to promote Mecca on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Guzman was either an employee working at Mecca, that she endorsed Mecca, or that she was otherwise associated or affiliated with Mecca.

32. GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of the same.

33. RAO who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

34. That we know of, RAO is depicted in the photos in Exhibit "D" to promote Mecca on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Rao was either an employee working at Mecca, that she endorsed Mecca, or that she was otherwise associated or affiliated with Mecca.

35. RAO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of the same.

36. VAN DERHAM is a successful model, actress, philanthropist, and

entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Van Derham has also worked on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, *VIVA GLAM*. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

37. That we know of, VAN DERHAM is depicted in the photo in Exhibit "E" to promote Mecca on its Instagram account. This Image was intentionally altered to make it appear that VAN DERHAM was either an employee working at Mecca, that she endorsed Mecca, or that she was otherwise associated or affiliated with Mecca.

38. VAN DERHAM has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of the same.

***Defendant's Business Activity and Misappropriation***

39. Defendant operates (or operated, during the relevant time period) a Bar, where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

40. Defendant owns, operates, and controls Mecca's social media accounts,

including its Facebook, Twitter, and Instagram accounts.

41. Defendant used Mecca's Facebook, Twitter, and Instagram accounts to promote Mecca's, and to attract patrons.

42. Defendant did this for its own commercial and financial benefit.

43. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Mecca, endorsed Mecca, or was otherwise associated or affiliated with Mecca.

44. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Mecca to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

45. Defendant was well aware that none of the Plaintiffs had ever been affiliated with or employed by Mecca, and at no point have any of the Plaintiffs ever endorsed Mecca or otherwise been affiliated or associated with Mecca.

46. All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

47. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

48. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

49. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

50. The fee that a professional model, like each Plaintiff, will receive is

negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

51. Most licenses to use a model's image are for one, two, or three-year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

52. Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Mecca.

53. Unauthorized use of Plaintiffs' Images deprives them of the income they are owed relating to the commercialization of their Images.

54. In addition, Plaintiffs allege that any improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of a false impression of association with Mecca.

55. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

56. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

57. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Mecca's website, Twitter, Facebook, or Instagram accounts.

58. Defendant used Plaintiffs' Images without their consent, and without

providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

59. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

60. Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

61. Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

62. Thus, this was done in furtherance of Defendant's commercial benefit.

63. Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identity to build their brand, they have acquired distinctiveness through secondary meaning. Plaintiffs' images either suggest the basic nature of their product or service, identify the characteristics of their product or service, or suggest the characteristics of their product or service that require an effort of the imagination by the consumer to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

64. Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

65. As such, unauthorized use of Plaintiffs' images to promote an establishment created an undeniable confusion in Defendant consumers' minds, which led to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' images for advertising purposes, that is to promote their business enterprises. As such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' images image and likeness

66. Defendant's use of Plaintiffs' images, likenesses, and/or identities constitutes a false designation of the source of origin, sponsorship, approval, or association that has deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved, or associated with Plaintiffs.

67. Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

68. Defendant knew that its use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

69. Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

70. As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

71. Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality

professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

72. Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

73. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

74. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

75. Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

76. Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

77. Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

78. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

79. Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant's establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities.

80. Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant's establishment events and activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant's businesses or Defendant's establishment events and activities. Among other

things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

81. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's establishment and its activities and attracting clientele to Defendant's establishment.

82. Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

83. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

84. Defendant's wrongful conduct as described herein was willful.

85. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

86. Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

87. The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

88. Defendant had caused irreparable harm to Plaintiffs, their reputation and

brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

89. Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continues to cause damage to Plaintiffs in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(State Common Law Misappropriation of Likenesses)**
**Violation of Right to Privacy; Right of Publicity**

90. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91. Plaintiffs hold the exclusive right to control the public dissemination of their names and likenesses for commercial use.

92. Defendant may not, and owes a duty not to, publish, print, display, or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, photograph, or other likeness of the Plaintiffs without their express consent to such use.

93. The Plaintiffs never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of their images, likenesses, or identities to advertise, promote, market, or endorse the Defendant's business or activities, or for any other commercial or other purpose;

94. Nevertheless, Defendant published, printed, displayed, and/or publicly used the Plaintiffs' images, likenesses, and identities on its social media sites for purposes of trade and/or commercial advertising, including, but not limited to, promoting, advertising, and marketing Defendant and its events and activities, and to lure customers and drive traffic to Defendant.

95. Defendant used Plaintiffs' images, likenesses, and/or identities as described herein intentionally, without authority and to its commercial benefit in order to,

inter alia, create the false perception that the Plaintiffs worked at, would appear at, or were otherwise affiliated with Defendant, endorsed Defendant or Defendant's business activities, and/or consented to or authorized Defendant's usage of their images, likenesses, and/or identities in order to advertise, promote and market Defendant's business activities.

96. Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

97. Plaintiffs are further informed and believe and hereby allege that discovery will prove that Defendant has republicized Plaintiffs' image and likeness on various occasions, via different media, after the initial date of the posting of their image and likeness and through the filing of this complaint.

98. Defendant's use of the Plaintiffs' images, likenesses, and identities to advertise, promote, and market Defendant's business, events, and activities as described in this Complaint was false, misleading, and a misrepresentation of fact.

99. The Plaintiffs' readily identifiable bodies and faces are shown in the well-lighted images used by Defendant.

100. Defendant misappropriated Plaintiffs' images and likenesses without notice or knowledge to the Plaintiffs and without even attempting to acquire Plaintiffs' permission.

101. Plaintiffs did not give Defendant permission to use their images or likenesses.

102. Defendant's unauthorized appropriation and continuous use of the Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law rights of privacy and specifically, their right to publicity.

103. The Defendant acted intentionally or recklessly by selecting Plaintiffs' images and, knowing it did not have permission to use the images for commercial gain, by posting the images on Defendant's social media sites in an effort to market the Defendant's establishment business and its events and activities.

104. Defendant is in the entertainment business and knew or should have known of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendant's commercial benefit.

105. Nevertheless, Defendant circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of a photoshoot, payments to Plaintiffs' agents or agencies, and the costs of licensing, totaling a substantial sum of money and resulting in damage to the Plaintiffs and a windfall to the Defendant.

106. Defendant has caused and will continue to cause irreparable harm and damage to the Plaintiffs, their reputations, and their brands by falsely attributing to the Plaintiffs their involvement with or endorsement of Defendant's establishment and Plaintiffs' association with events and activities relating thereto.

107. Defendant has damaged Plaintiffs as a direct, foreseeable, and proximate result of their unauthorized use of Plaintiffs' images, likenesses, and/or identities without compensating Plaintiffs, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses, and damages for reputational harm, in amounts to be established by proof at trial.

108. As a further direct and proximate result of Defendant's conduct as alleged herein, Defendant has earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

109. As a further direct and proximate result of Defendant's conduct as alleged

in here, Plaintiff has experienced mental and emotional anguish and suffering

**FOURTH CAUSE OF ACTION**
**(Negligence and Respondeat Superior)**

110. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

111. Plaintiffs are further informed and believe and herein allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes, which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

112. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

113. Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on Plaintiffs' property and publicity rights.

114. Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

115. Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes was not unauthorized, non-consensual, or false and deceptive.

116. Defendant further failed to enforce or implement the above-stated policies

and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Colorado law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

117. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without their consent, authorization and done so in a false, misleading, and/or deceptive manner.

118. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Mecca's Bar;

(c) For punitive damages in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: June 30, 2026.

***/s/ Joseph N. Casas***
Joseph N. Casas
Illinois Bar No. 6274674

California Bar No. 225800
**THE CASAS LAW FIRM, P.C.**
Talent Rights Law ®
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
(855) 267-4457
joseph@talentrights.law